## THE EUREKA NO. 102.
## THE BERN.

### THE KANGAROO.
### No. A–17471.

District Court, E. D. New York.
June 3, 1946.

Frank G. Colgan, of Brooklyn, N. Y., for libellant.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for claimant, tug Bern.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for claimant-impleaded.

GALSTON, District Judge.

On February 3, 1945, the barge Eureka No. 102 was in tow of the tug Bern, together with three other barges. The barges

were arranged in two tiers with the Eureka No. 102 as the starboard hawser barge. The barges were light and were proceeding from New York Bay for Port Reading, New Jersey. Without incident the tow proceeded to the B. & O. Railroad bridge, and there went through the east or Staten Island side of the draw. Previously, while waiting for the drawbridge to open, the Bern tow was assisted by another Reading tug, the Patience. As the Bern tow went through the draw, the Patience proceeded ahead of the tow. It may be remarked in passing that there were no lines from the Patience to the Bern tow. Coming on from the opposite direction was the steam lighter Kangaroo. The Patience blew a signal of one whistle, which was answered by the Kangaroo. The two vessels, the Kangaroo and the Patience, effected a port to port passage safely. But from then on the versions given by the witnesses in the case vary.

The Bern master claims that he also gave a one-whistle signal to the Kangaroo and that it was not answered. The Kangaroo captain testified that he heard only one whistle, that coming from the Patience, and to that signal he responded. It is claimed on behalf of the Bern that the Kangaroo, instead of proceeding on to make a port to port passage with the Bern tow, got on a course between the Patience and the Bern, and that when those on the Bern observed that situation the Bern reversed her engines and went hard right in an effort to avoid the Kangaroo. The Bern contended that the Kangaroo was then heading across the Bern's bow toward the Jersey shore. The tide was ebb and as a result the Eureka No. 102 brought up on the stern of the Bern although there was no collision between the Kangaroo and the Bern tow. Thus it is claimed by the Bern that the collision between the Eureka No. 102 and the Bern was caused by the Kangaroo in that the Kangaroo crowded the Bern and interfered with its navigation.

The Kangaroo's story is quite different. The people on the Kangaroo observed the Bern and her tow coming through the port draw, that is the Staten Island side of the B. & O. bridge, while the Patience was coming through in the vicinity of the starboard side of the channel. It is claimed that at that stage the Bern's tow was tailing toward the Staten Island shore. After the Kangaroo had responded to the one whistle signal of the Patience and had effected port to port passage with about seventy-five feet between the vessels, it is claimed by the Kangaroo that the Kangaroo and the Bern tow were in position to pass starboard to starboard, each showing her green light to the other. At a point about four hundred feet between the steam lighter and the tug, it is asserted that the Bern moved quite sharply to her starboard with her tow tailing toward the Staten Island shore throughout the time. The Kangaroo's captain concluded that there was nothing for him to do save to throw his wheel hard left, carrying the Kangaroo to port, that is toward the Jersey shore, in the vicinity of Morse's Creek, which runs into the Kills. The Kangaroo fetched up at the upper side of the mouth of that creek, and it is claimed the Bern passed the stern of the Kangaroo at a distance of about fifty feet with her tow still tailing towards Staten Island.

As is not unusual in these harbor collisions, the testimony is not satisfactory, though the tryer of the facts has the benefit of observing the witnesses and thus determining credibility. Then too there are the probabilities to be considered. Gallagher, the captain of the Bern, was an unconvincing witness, as was his deckhand. Bill was uncertain. Gibbons, the captain of the Kangaroo, and Johnson, his deckhand, described a more likely situation.

I must conclude that the fault lay with the Bern in her uncertain maneuvering which resulted from her passing through the Staten Island side of the B. & O. Railroad draw.

The libellant may have a decree against the Bern and the libel and the impleading petition will be dismissed as against the Kangaroo.

Concurrently with the filing of this opinion, findings of fact and conclusions of law will be filed.